UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT COBB, et al.,<br><br>    Defendants. | Case No.:  15-cv-0176-GPC (WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**<br><br>**[ECF Nos. 24 and 25]** |

Plaintiff Gregory Smith, proceeding *pro se*, brings this action under 42 U.S.C. Section 1983 against officials of the California Department of Correction and Rehabilitation ("CDCR") alleging violations of his rights under the First and Eighth Amendments. Defendants have moved for summary judgment on the Eighth Amendment claim on the grounds that Plaintiff has failed to exhaust available CDCR administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (ECF No. 24.) Defendants have also moved to dismiss the Eighth Amendment claim on res judicata grounds and the First Amendment claim on statute of limitations grounds. (ECF No. 25.) Plaintiff has filed responses in opposition to both motions, (ECF Nos. 34 and 41) and Defendants have filed a reply in further support of their motion for summary judgment, (ECF No. 35). The motions are before the undersigned magistrate judge for preparation of a report and recommendation. *See* 28 U.S.C. Section 636(b)(1); CivLR 72.1(c).

# BACKGROUND

## I. The CDCR Appeals Process

Inmates in CDCR custody may appeal "any departmental decision, action, condition, or policy which [an inmate] can demonstrate as having an adverse effect upon [his or her] welfare." Cal. Code Regs. Tit. 15 § 3084.1. The regulations in effect in 2010 required an inmate to proceed through one informal level and three formal levels to exhaust administrative remedies. *Id.* § 3084.5 (2010). At the informal level, the inmate was required to submit his appeal[1] on a CDCR Form 602 to prison staff directly involved in the action or decision. *Id.* If the issue was not resolved at the informal level, the inmate could appeal to the first formal level of review, which was conducted by the appeal coordinator. *Id.* §3084.5 (2010). At the second level, the inmate's unsatisfied appeal was reviewed by the "hiring authority or designee." *Id.* If the inmate was unsatisfied by the second-level review, the inmate could then appeal to the third level by submitting an appeal to the Office of Appeals in Sacramento. *Id.* The third-level review exhausted administrative remedies. *Id.* (*See* Cobb Decl. ¶¶ 2-4; Lozano Decl. ¶ 6, attached as Ex. B to Def.'s Mot. for Summ. J.)

## II. Summary of Facts and Procedural Chronology

Plaintiff is an inmate at Folsom State Prison, in Folsom, California. At all times relevant to this action, however, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("Donovan") in San Diego, California. (Am. Compl. ¶ 3, ECF No. 4.) Defendant S. Perez was a correctional sergeant in the mental health department at that facility. (*Id.* ¶ 7.) Defendant S. Daroglou was a clinical psychiatrist. (*Id.* ¶ 6.) Defendant N. Beduhi was a correctional officer. (*Id.* ¶ 8.) Defendant R. Cobb was the appeal coordinator. (*Id.* ¶ 4.) Defendant F. Sharpe was a correctional counselor. (*Id.* ¶ 5.)

On September 29, 2010, Plaintiff reported to Perez, Daroglou, and Beduhi that his cellmate was displaying "bizarre behavior." (*Id.* ¶ 39.) This included walking about the cell naked and talking about wanting to watch Plaintiff use the toilet, sex with men, and rape.

---

[1] The regulations refer to inmate grievances, even those at the first level, as "appeals."

(*Id.*) Perez, Daroglou, and Beduhi informed Plaintiff that they would "take care of the problem." (*Id.* ¶ 40.) The following day Plaintiff was assaulted by his cellmate. (*Id.*) He suffered second degree burns on his right arm, neck and back, a broken left shoulder, left eye damage, two stab wounds, and a fractured disc. (*Id.*) Plaintiff was hospitalized for ten days at U.C. San Diego Medical Center. (*Id.*) Plaintiff claims to suffer continuing mental and physical trauma as a result of the assault. (*Id.*)

On October 29, 2010, Plaintiff submitted an appeal regarding the September 30, 2010 incident to Appeal Coordinator Cobb. (Pl.'s Decl. ¶ 4, attached to Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 34, p. 43.[2]) The appeal was received by the Appeal Coordinator's office on November 5, 2010. (Cobb Decl. ¶ 6.) Plaintiff requested continuation of his single cell status, compensation for his injuries, and copies of all reports related to the assault. (Pl.'s Opp. to Def.'s Mot. for Summ. J. Ex. B, pp. 17-18.) On November 8, 2010, Appeal Coordinator Cobb rejected and "screened back" Plaintiff's appeal for failure to seek informal review with his counselor. (Pl.'s Decl. ¶ 5; Cobb. Decl. ¶ 6.)

On November 9, 2010, Plaintiff gave his appeal to Correctional Counselor Sharpe for informal review. (Pl.'s Decl. ¶ 6.) On December 9, 2010, Sharpe told Plaintiff that he was unable to provide Plaintiff with the relief requested and that Plaintiff's appeal was inappropriate for informal review. (Am. Compl. ¶¶ 19-20; Pl.'s Decl. ¶ 7.) Sharpe told Plaintiff that he (Sharpe) "would take the appeal back to [the] appeal coordinator" so that Plaintiff would not be at fault for the appeal being late. (Am. Compl. ¶ 20; Pl.'s Decl. ¶ 7.)

Several months passed. On March 18 and May 1, 2011, Plaintiff sent requests to Appeal Coordinator Cobb seeking an update on the status of his appeal. (Pl.'s Decl. ¶¶ 8, 9.) Cobb responded in writing on May 5, 2011, stating, "you [sic] appeal is not in the appeals office." (*Id.* ¶ 9; Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. D; Def.'s Mot. for Summ. J. Ex. D.) On May 23, 2011, Plaintiff submitted a letter to the Chief of the Office

---

[2] Page numbers in record citations refer to the numbers stamped on documents by ECF.

of Appeals in Sacramento explaining that his appeals had "gone unheard and unnoticed" and asking for assistance "in the resolution of the 602 appeal." (Pl.'s Decl. ¶ 10; Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. E, at 24-25; Def.'s Mot. for Summ. J. Ex. D, at 17-18.) The Office of Appeals responded on June 16, 2011, rejecting Plaintiff's appeal on the grounds that Plaintiff had bypassed lower levels of appeal. (Pl.'s Decl. ¶ 11; Lozano's Decl. ¶ 9; Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. F, at 29-30.) On June 30, 2011, Plaintiff sent another request to Cobb asking that his appeal be moved in the "right direction." (Pl.'s Decl. ¶ 12; Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. F, at 31.) Cobb responded that Plaintiff's request was improper under the regulations. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. F, at 31.)

On February 10, 2012, Plaintiff filed a lawsuit in California state court in the County of San Diego alleging failure to protect and loss of property claims based on the September 30, 2010 incident. (Def.'s Mot. for Summ. J. Ex. A.) On September 7, 2012, the state court sustained a demurrer without leave to amend for failure to exhaust administrative remedies and failure to timely file a claim under the Tort Claim Act, Cal. Gov't. Code § 810, as to Defendants A. Clark, J. Clarey, E. Solis, S. Daroglou, and R. Perez. (Def.'s Mot. for Summ. J. Ex. E.) On January 11, 2013, the state court sustained a second demurrer without leave to amend against Plaintiff for failure to exhaust administrative remedies and for failure to timely file a claim under the Tort Claims Act as to Defendant Michael Cate. (*Id.*) Plaintiff filed an appeal on March 29, 2013. (Am Compl. ¶ 35.) The appeals court affirmed the judgment on August 15, 2014. (Def.'s Mot. for Summ. J. Ex. F.) The court held that Plaintiff had failed to demonstrate that he had paid, or secured a waiver of, the filing fee required by Tort Claims Act and that Plaintiff had failed to exhaust internal CDCR remedies. (*Id.*) The court specifically rejected Plaintiff's argument that prison officials had mishandled his appeal, holding that Plaintiff's proper avenue of redress, were he to believe "that his appeal was not being properly considered," was to "petition for a writ of mandate ordering the Department to perform its duty by completing the review."  (*Id.* at 45.)

Plaintiff commenced this action on January 26, 2015. (Compl., ECF No. 1.) Plaintiff

filed the operative First Amended Complaint on March 23, 2015. In that pleading, Plaintiff alleges that Appeal Coordinator Robert Cobb and Correctional Counselor Frank Sharpe obstructed his access to the courts in violation of his First Amendment rights. (Am. Compl. ¶ 47.) Plaintiff also alleges that prison clinical psychiatrist S. Daroglou, Correctional Sergeant R. Perez, and Correctional Officer Nazar Buduhi failed to protect him from assault by his cellmate in violation of his Eight Amendment rights. (*Id.* ¶¶ 57-59.)

Defendants filed their Motion for Summary Judgment on October 8, 2015. (ECF No. 24.) Defendants filed their Motion to Dismiss on October 9, 2015. (ECF No. 25.) Plaintiff filed an opposition to Defendants' Motion for Summary Judgment on November 20, 2015. (ECF No. 34.) Defendants filed a reply on December 7, 2015. (ECF No. 35.) On January 15, 2016, this Court granted Plaintiff an extension of time to file his Opposition to Defendants' Motion to Dismiss. Plaintiff filed an Opposition to Defendants' Motion to Dismiss on February 16, 2016. (ECF No. 41.)

## DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiff's Eighth Amendment claim on res judicata grounds. Defendants move to dismiss Plaintiff's First Amendment claim on statute of limitations grounds. The Court will address each argument in turn.[3]

---

[3] Defendants' Motion to Dismiss is not a model of clarity. A careful reading of the motion indicates that Defendants' res judicata argument is directed at Plaintiff's Eighth Amendment claim, while Defendants' statute of limitations argument is directed at Plaintiff's First Amendment claim. But, at several points, Defendants appear to argue that both their res judicata and statute of limitations arguments are directed at the Amended Complaint as a whole. *See, e.g.*, Mem. of P. & A. in Supp. of Def.'s Mot. to. Dismiss 8, 22, ECF No. 25-1 ("The doctrine of collateral estoppel precludes Plaintiff from relitigating his *claims* herein"); ("The Court should also dismiss *the Amended Complaint* on statute-of-limitations grounds"); ("Plaintiff is now precluded from asserting *this action*") (emphasis added). Defendants' lack of precision is most starkly on display in their request that the Court "dismiss *the Complaint* because Plaintiff is time-barred from asserting *an access-to-courts claim*." (*Id.* at 17.) (emphasis added again). This sloppiness is extremely unhelpful.

### A. Res Judicata Does Not Bar Plaintiff's Eighth Amendment Claim.

State judicial proceedings are accorded "the same full faith and credit in every court within the United States … as they have by law … in the courts of [the] State … from which they are taken." 28 U.S.C. § 1738. Federal courts therefore "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment is rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984); *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (federal courts apply preclusion rules of state in which the prior judgment was entered).

The term "res judicata" encompasses two distinct preclusion doctrines in California law: claim preclusion and issue preclusion. *See Mycogen Corp. v. Monsanto Corp.*, 51 P.3d 297, 301 (Cal. 2002); *Lucido v. Superior Court,* 795 P.2d 1223, 1125 n.3 (Cal. 1990). Claim preclusion, also known as true res judicata, bars further litigation on a claim that has previously resulted in a final judgment on the merits. *Mycogen*, 51 P.3d at 301-02. Claim preclusion applies when: (1) the claims decided in the prior action are identical to those in the later action; (2) there was a final judgment on the merits in the prior action; and (3) the party against whom claim preclusion is invoked was a party or was in privity with a party to the prior action. *Pollock v. Univ. of S. Cal.*, 6 Cal. Rptr. 3d 122, 132 (Ct. App. 2003).

Issue preclusion, also known as collateral estoppel, bars relitigation of issues actually decided in prior proceedings. *Lucido,* 795 P.2d at 1225. Issue preclusion applies only when the party asserting the bar meets its burden of showing that: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) the issue to be precluded "must have been actually litigated in the former proceeding"; (3) the issue to be precluded "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; and (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Id.* Issue preclusion must also serve the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id.* at 1227.

Defendants do not distinguish clearly between claim and issue preclusion.[4] The Court will therefore address both preclusion doctrines.

The Court first addresses claim preclusion, or true res judicata. A threshold requirement for the assertion of claim preclusion is that the prior judgment must have been entered "on the merits." *Pollock*, 6 Cal. Rptr. 3d at 132. Under California law, a dismissal on jurisdictional grounds is generally not considered to be "on the merits" for purposes of claim preclusion. *Lockwood v. Sheppard, Mullin, Richter & Hampton*, 93 Cal. Rptr. 3d 675, 682 (Ct. App. 2002); *Nichols v. Cangoa Industries*, 148 Cal. Rptr. 459, 466 (Ct. App. 1978). Defendants concede that the dismissal of Plaintiff's state court action was jurisdictional and therefore not a judgment on the merits. (Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss 21 ("In California, exhaustion of administrative remedies is a jurisdictional prerequisite to state-court litigation, and dismissal for lack of jurisdiction is not a final judgment on the merits.")). Claim preclusion therefore does not bar Plaintiff from asserting his Eighth Amendment claim in this action, even though it is, for res judicata purposes, the same claim that he asserted unsuccessfully in state court.

Defendants' true argument appears to be that issue preclusion, or collateral estoppel, bars Plaintiff from relitigating the exhaustion issue already passed on by the California

---

[4] Defendants not only muddle the two preclusion doctrines together, they also misstate the law. On page eighteen of their memorandum in support of the motion to dismiss, Defendants declare that "*collateral estoppel* (claim preclusion) applies when the following three elements are satisfied: (1) the claims decided in the prior action are identical to those brought in the subsequent action; (2) there was a final judgment on the merits in the prior action; and (3) the party *against whom the claim is brought* was a party to, or was in privity with a party to, the prior adjudication. *Pollock v. Univ. of S. California*." (Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss 11) (emphasis added). The actual language in *Pollock*, however, is quite different: "The doctrine of *res judicata*—or claim preclusion—adheres when (1) the issues decided in the prior adjudication are identical with those presented in the later action; (2) there was a final judgment on the merits in the prior action; and (3) the party *against whom the plea is raised* [i.e., against whom claim preclusion is asserted] was a party or was in privity with a party to the prior adjudication." 6 Cal. Rptr. 3d at 132 (emphasis added).

courts. But, issue preclusion only bars the relitigation of issues actually decided in prior proceedings. At a minimum, therefore, the law applied in deciding the issue in the prior case must be materially identical to the law applied in the subsequent case. *See Cal. Hosp. Ass'n v. Maxwell-Jolly*, 115 Cal. Rptr. 3d 572, 583 (Ct. App. 2010); *U.S. Golf Assn. v. Arroyo Software Corp.*, 81 Cal. Rptr. 2d 708, 714 (1999).

Here, the state exhaustion requirement is significantly different from the exhaustion requirement imposed by the PLRA. The PLRA mandates that prisoners exhaust "available" administrative remedies before filing suit in federal court. Under Ninth Circuit law, however, prisoners are excused from attempting to exhaust generally available administrative remedies when the actions of prison officials render such remedies "effectively unavailable." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (recognizing that threat of retaliation may render administrative remedies effectively unavailable); *see also Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (en banc) (no remedies available where officials failed to inform inmates of availability of grievance procedure); *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (recognizing that improper screening of grievance renders remedies effectively unavailable); *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (warden sent prisoner on "wild goose chase" in search of irrelevant regulation). A prisoner for whom no administrative remedies are available may proceed directly to federal court. *Brown v. Valoff*, 422 F.3d 926, 935 n.10 (9th Cir. 2005).

Courts applying California's exhaustion requirement, in contrast, direct prisoners who believe that prison officials are improperly delaying or obstructing their grievances to file suit for a writ of mandate ordering the CDCR to perform its duty. *Wright v. State*, 19 Cal. Rptr. 3d 92, 97 (Ct. App. 2004). A prisoner who fails to seek a writ of mandate is not excused from further attempts to exhaust administrative remedies, and any state court action filed on the prisoner's underlying claim is subject to dismissal. *See Id.* at 97, 100. That is precisely what happened in this case. (Def.'s Mot. for Summ. J. Ex. F., at 45 (holding that Plaintiff's proper course, if he believed that official's had impeded the processing of his grievance, was to seek a "writ of mandate ordering the [CDCR] to

perform its duty by completing the review")).

California's writ of mandate requirement is foreign to the PLRA, which "requires exhaustion of available administrative, not judicial, remedies." *Thorns v. Ryan*, No. 07-CV-0218H (AJB), 2008 WL 544398, at *4 n.2 (S.D. Cal. Feb. 26, 2008) (Huff, J.) (rejecting prison officials' argument that prisoner whose appeal was improperly screened out by prison officials was required to seek a writ of mandate in state court before filing his federal lawsuit); *see also Andrews v. Whitman*, No. 06CV2447-LAB (NLS), 2008 WL 878466, at *6 (S.D. Cal. Mar. 28, 2008) (Burns, J.) (same). The determination of the exhaustion issue in state court was therefore grounded on a requirement that is not present in the PLRA, and Plaintiff is not barred from arguing that he exhausted available remedies as required by the PLRA.

Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim on res judicata grounds therefore should be denied.

**B.     The Statute of Limitations Does Not Bar Plaintiff's First Amendment Claim.**

Defendants also move to dismiss Plaintiff's First Amendment access-to-courts claim on statute of limitations grounds.

Section 1983 claims are governed by the forum state's general or residual statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249 (1989); *see also Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Federal courts also borrow the forum state's tolling principles when not inconsistent with federal law. *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000). While state law determines the statute of limitations period for Section 1983 claims, federal law determines when the claim accrues. *Id.* A Section 1983 claim accrues "when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Id.*

The residual statute of limitations for personal injury claims in California is two years. Cal. Civ. Proc. Code § 335.1. The statute is tolled for up to two years for prisoners who at the time the cause of action accrued were either imprisoned on a criminal charge or

serving a sentence of less than life for a criminal conviction. *Id.* § 352.1(a). Defendants concede that the statute of limitations, including the two year tolling period, is four years. (Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss 25.) Defendants contend, however, that Plaintiff's access-to-courts claim accrued on November 8, 2010, the date on which Cobb is alleged to have improperly screened Plaintiff's appeal. (*Id.* at 24.) Plaintiff commenced this action on March 23, 2015. If Defendants are correct, and Plaintiff's access-to-courts claim accrued on November 8, 2010, then that claim would be barred by the statute of limitations.

Plaintiff, on the other hand, argues that his access-to-courts claim accrued on the date that he "suffered an actual injury" through dismissal of his state court action. (Pl.'s Opp'n to Def.'s Mot. to Dismiss 16, ECF No. 41 (citing *Christopher v. Harbury*, 536 U.S. 403 (2002))). Plaintiff's state court action was dismissed on September 7, 2012, less than four years before the commencement of this action. (Am. Compl. ¶ 33.) Thus, by Plaintiff's reckoning, his First Amendment access-to-courts claim is timely.

In *Morales v. City of Los Angeles*, 214 F.3d 1151 (9th Cir. 2000), the Ninth Circuit addressed the question of when a cause of action accrues for statute of limitations purposes in an action in which the plaintiffs alleged that police perjury and other misconduct occurring in a *previous* civil rights lawsuit caused them to lose that case and thus deprive them of their constitutional right of access to the courts. The court held that the plaintiffs' access-to-courts claim accrued on the date that an adverse judgment was entered against plaintiffs in the prior state court civil proceeding. *Id.* at 1154 (citing *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998) (access-to-courts claim based on alleged police cover-up does not ripen until underlying state court proceeding is terminated adversely to plaintiffs)); *cf. Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that access-to-courts claims are only cognizable when the plaintiff can show that he suffered a concrete injury such as an adverse judgment or that he was so stymied by official misconduct that he was "unable even to file a complaint"). Applying principles borrowed from California law, the *Morales* court also held that the statute of limitations was tolled from the date on which an

appeal in the prior case was filed and the date on which the state appellate court issued a remittitur. 214 F.3d at 1155.

Here, Plaintiff's access-to-the-courts claim accrued on September 7, 2012, the date on which Plaintiff's state court action was dismissed. (Def.'s Mot. for Summ. J. Ex. E, at 32.) The statute began to run on that date. The statute was then tolled from March 29, 2013, the date on which Plaintiff filed his appeal, until August 15, 2014, the date on which the appeals court issued its decision. (Am Compl. ¶ 35.; Def.'s Mot. for Summ. J. Ex. F, at 37.) Plaintiff filed his complaint in this action on January 26, 2015. The statute of limitations at that time had nearly three years left to run. Therefore, Plaintiff's access-to-the-courts claim was timely.

Defendants' Motion to Dismiss Plaintiff's First Amendment access-to-the-courts claim on statute of limitations grounds should be denied.

## II.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim on the grounds that Plaintiff has failed to properly exhaust CDCR administrative remedies. as required by the PLRA.

### A.  Legal Standards on Summary Judgment

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party and may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam); *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). A fact is material if it is one which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking to establish or disprove the existence of a genuine issue of material fact must do so by citing to "particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court may consider materials in the record not cited by either party, but is not required to do so. Fed. R. Civ. P. 56(c)(3).

### B. The PLRA Exhaustion Requirement

The PLRA provides that "no action shall be brought with respect to prison conditions under [42 U.S.C. Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to reduce the number and increase the quality of inmate lawsuits, and to afford prison officials an opportunity to address complaints internally before the initiation of a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Under the PLRA, a prisoner must complete the administrative review process in accordance with the prison system's "deadlines and other critical rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This exhaustion requirement applies to all inmate suits about prison life, *Porter*, 534 U.S. at 532, regardless of the relief sought by the prisoner or the relief offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Although the PLRA requires exhaustion of all available administrative remedies, the Ninth Circuit has consistently held that exhaustion is excused when prison officials render administrative remedies "effectively unavailable." *See McBride*, 807 F.3d at 987 (holding that a threat of retaliation that actually and reasonably deters an inmate from pursuing an appeal excuses the inmate's failure to exhaust); *Albino*, 747 F.3d at 1176 (exhaustion of administrative remedies was effectively unavailable when inmate complained orally about beatings but was not provided with complaint forms or properly informed of his right to submit complaints); *Sapp*, 623 F.3d at 823 ("Improper screening of an inmate's administrative grievance's renders administrative remedies "effectively unavailable" such that exhaustion is not required."); *Nunez*, 591 F.3d at 1226 (warden's mistake in referring inmate to an unobtainable and irrelevant policy document excused failure to timely exhaust).

Failure to exhaust administrative remedies is an affirmative defense as to which the

defendant bears the burden of proof. *Albino*, 747 F.3d at 1166. Unless it is clear on the face of the complaint that the inmate has failed to exhaust, "defendants must produce evidence proving failure to exhaust in order to carry their burden." *Id.* "A defendant must prove that there was an available administrative remedy and that the prisoner did not exhaust that remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). The burden then shifts to the plaintiff to show that in the plaintiff's particular case the generally available administrative remedies were "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* However, the ultimate burden of proof remains with the defendant. *Id.* The court may grant summary judgment *sua sponte* to the plaintiff if, viewing the evidence in light most favorable to the defendant, the moving defendant has not shown a genuine dispute of fact on the issue of exhaustion. *Albino*, 747 F.3d at 1176.

### C. Defendants Are Not Entitled to Summary Judgment.

Defendants have submitted evidence in the form of declarations by J.D. Lozano, former Chief of the Office of Appeals, and by R. Cobb, the appeals coordinator at Donovan. These declarations describe the process that existed in 2010 for the submission and processing of appeals. (Cobb Decl. ¶¶ 2-4; Lozano Decl. ¶ 6.) The declarations also describe the record keeping protocols established by the CDCR and by prison staff. (Cobb Decl. ¶ 4; Lozano Decl. ¶¶ 3-5.) Finally, the declarations describe records relating to appeals submitted by Plaintiff during the relevant time period. (Cobb Decl. ¶ 6; Lozano Decl. ¶¶ 8-9.) According to these records, Plaintiff never fully exhausted his appeal related to the September 30, 2010 attack. (Cobb Decl. ¶ 7; Lozano Decl. ¶¶ 10-11.)

Plaintiff has responded by submitting a declaration in which he avers that he submitted an appeal to the appeal coordinator on October 29, 2010. (Pl.'s Decl. ¶ 4.) The appeal was screened back to him for informal review on November 8, 2010. (Pl.'s Decl. ¶ 5.) Plaintiff gave the appeal to Correctional Counselor Sharpe on November 9, 2010. (Pl.'s Decl. ¶ 6.) Sharpe told Plaintiff that no relief was available at the informal level and that Sharpe would file Plaintiff's appeal on his behalf. (Pl.'s Decl. ¶ 7.) On March 18, 2011, Plaintiff sent a request to the Appeal Coordinator to inquire about the whereabouts of his

appeal. (Pl.'s Decl. ¶ 9.) On May 1, 2011, Plaintiff made a second such request to the Appeal's Coordinator. (Pl.'s Decl. ¶ 10.) Cobb responded by informing Plaintiff that there was no record of Plaintiff's appeal. (*Id.*) On May 23, 2011, Plaintiff submitted a letter to the Chief of the Office of Appeals seeking assistance. (Pl.'s Decl. ¶ 11.) Plaintiff also sent a copy of this letter to the Inspector General's office. (*Id.*) On June 16, 2011, the Office of Appeals rejected Plaintiff's appeal for bypassing the lower levels. (Pl.'s Decl. ¶ 12.)

The evidence submitted by Defendants "at most meets their burden of demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry." *Williams*, 775 F.3d at 1192. Viewing the evidence in the light most favorable to Plaintiff, however, the Court concludes that Defendants have failed to carry their burden of showing that administrative remedies were actually available to Plaintiff. Critically, Plaintiff alleges that Sharpe took charge of Plaintiff's appeal and promised to file it on Plaintiff's behalf. However, the office of the appeal coordinator at Donovan has no record of having received this appeal. Accepting Plaintiff's allegation as true, therefore, a trier of fact could reasonably infer that Sharpe either failed to file Plaintiff's appeal, or that the appeal coordinator lost Plaintiff's appeal. In either case, the fault would lie with the prison system, not with Plaintiff, and Plaintiff would be entitled to prevail on the issue of exhaustion. Plaintiff's allegation therefore *at a minimum* raises an issue of fact regarding whether administrative remedies were effectively unavailable in his particular case.

Defendants reply that under CDCR regulations, the prisoner, rather than the prison official, is responsible for filing an appeal with the appeals coordinator's office after the matter has been addressed at the informal level. (Reply in Further Supp. of Def.'s Mot. for Summ. J. 2, ECF No. 35.) This argument misses the mark because, although Sharpe may not have had a general responsibility to file the appeal, Plaintiff's argument is that, in this particular case, he took on the responsibility of doing so. Defendants also argue that Plaintiff has failed to submit evidence showing that he appealed Sharpe's alleged mishandling of the appeal. (*Id.*) But an inmate whose appeal has been mishandled to the degree that administrative remedies may be said to be "effectively unavailable" is not also

14

required to exhaust a separate appeal concerning that mishandling in order to exhaust administrative remedies with regard to the claims contained in the original appeal. *Brown,* 422 F.3d at 935 n.10. Defendants are not entitled to summary judgment.

Defendants request that the Court, if it denies their motion for summary judgment, permit Defendants to produce witnesses at a preliminary proceeding for the purpose of resolving any factual issues bearing on exhaustion. (Memo. of P. & A. in Supp. of Def.'s Mot. for Summ. J. 14.) As Defendants note, *Albino* held that where summary judgment on the issue of exhaustion is not appropriate, "the district judge may decide disputed questions of fact in a preliminary proceeding." 747 F.3d at 1168. But *Albino* also held that "[i]f the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion, it may be appropriate for the district court to grant summary judgment *sua sponte* for the nonmovant on this issue." *Id.* at 1176. The court observed that "great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law." *Id.* at 1176. Nevertheless, the court found that notice concerns are "satisfied in a case such as this one, where, after having had a full opportunity to gather evidence, a defendant moves for summary judgment based on a failure to exhaust under the PLRA." *Id.* at 1177. Holding that the defendants had not carried their burden of proving the availability of an administrative remedy, the panel remanded with instructions that the district court enter summary judgment for the plaintiff on the issue of exhaustion. *Id.*

In this case, despite having an opportunity to do so, Defendants have failed to rebut Plaintiff's sworn allegation that Sharpe took charge of his appeal and promised to file the appeal on Plaintiff's behalf. Had Defendants submitted a declaration by Sharpe denying this allegation, then a material issue of fact would have existed, and Defendants would have been entitled to a preliminary hearing. However, Defendants did not submit a declaration by Sharpe, nor have they denied, whether in a declaration on personal

knowledge or otherwise, Plaintiff's simple, but obviously critical, allegation regarding Sharpe's handling of his appeal. Nor were Defendants caught off guard by this allegation, which Plaintiff made in his opposition to the demurrer in state court as long ago as June 30, 2012, (Def. Mot for Summ. J. Ex. D, p. 5), and which Plaintiff repeated both in his pleadings and in his opposition to Defendants' motion in this action. Defendants have had ample opportunity to challenge Plaintiff's account of Sharpe's involvement in Plaintiff's appeal. Defendants have not taken advantage of that opportunity. There being no material issue of fact apparent on this record, Plaintiff is entitled to summary judgment on the issue of exhaustion.

## CONCLUSION

For the reasons stated, the Court recommends that Defendants' Motion for Summary Judgment be denied and that summary judgment be granted to Plaintiff on the issue of exhaustion. The Court further recommends that Defendants' Motion to Dismiss be denied in its entirety.

**IT IS ORDERED** that no later than **May 25, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 15, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  May 6, 2016

Hon. William V. Gallo
United States Magistrate Judge