# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| GREGORY SMITH, | Case No.: 3:15-cv-00176-GPC-WVG |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| R. COBB; F. SHARPE; S. DAROGLOU; P. PREZ; and N. BUDUHI, | |
| | **[ECF No. 62]** |
| Defendants. | |

Before the Court is a motion for summary judgment by Defendants Cobb, Sharpe, and Beduhi.[1] (ECF No. 62.) Plaintiff filed an opposition on September 29, 2017. (ECF No. 76.) Based upon a review of the moving papers, the applicable law, and for the foregoing reasons, the Court hereby **GRANTS** summary judgment in favor of Beduhi, and **GRANTS in part and DENIES in part** summary judgment in favor of Cobb and Sharpe.

As discussed below, however, the Court gives notice to Plaintiff that it is considering granting summary judgment as to the remainder his claims against

---

[1] The briefing suggests that the operative Amended Complaint misspells Defendant Beduhi's last name as "Buduhi."

1

3:15-cv-00176-GPC-WVG

Defendants Cobb and Sharpe, and gives Plaintiff 21 days to offer evidence that would preclude summary judgment on the ground identified by the Court below.

I. **Plaintiff's Claims**

In the operative complaint, Plaintiff—a California state prisoner—asserts claims of violation of his First Amendment right to access to courts and his Eighth Amendment right to protection against harm. (ECF No. 4.) The complaint asserts the following relevant allegations. On September 29, 2010, Plaintiff complained to Defendants Prez, Daroglou, and Beduhi about his cellmate's displaying "bizarre behavior" such as "nudeness around the cell, wanting to watch Plaintiff use the toilet, speaking of having sex with men, rape." (*Id.* at 9 ¶¶ 39–40.) On September 30, 2010, at the Richard J. Donovan Correctional Facility ("Donovan CF") Plaintiff's cellmate attacked him. (*Id.* at 4 ¶ 10.) Plaintiff incurred serious injuries: second degree burns from hot water being poured on him, a broken left shoulder, eye damage, stab wounds, and a fractured L3-disk. (*Id.*) Plaintiff returned to prison from the hospital on October 10, 2010. (*Id.* ¶ 11.)

On October 29, Plaintiff submitted a Form CDC 602 ("Form 602") appeal to Cobb asking for a permanent single-prisoner cell, damages as a result of the attack, and copies of all reports relating to the attack. (*Id.* at 5 ¶ 13.) On November 8, 2010, the Form 602 was "screened" and returned to Plaintiff instructing him to take the request to his "counselor" at the informal level. (*Id.* ¶ 14.) On November 9, 2010, Plaintiff gave the Form 602 to Sharpe for an informal-level review. (*Id.* ¶ 17.) On November 29, Plaintiff submitted a "GA22 Inmate Request for Interview" because he had not received a response from Sharpe. (*Id.* ¶ 18.) Sharpe eventually responded, and informed Plaintiff that he could find no reports relating to the attack, he could not compensate Plaintiff, and that he lacked the authority to alter Plaintiff's cell status. (*Id* at 5–6 ¶ 19.) Sharpe told Plaintiff that he would return the Form 602 to the appeal level, and that Plaintiff would not be held at fault for the delay in his appeal. (*Id.* at 6 ¶ 20.)

On March 8, 2011, Plaintiff made a request to Cobb about the status of his Form 602 appeal, but received no response. (*Id.* ¶ 21.) Plaintiff made another request on May

1, 2011, and Cobb informed Plaintiff that the appeal was not in his office. (*Id.* ¶ 22.) On May 23, 2011, Plaintiff sent a letter to the chief inmate appeal branch (the third level of appeal above Cobb), and sought assistance in obtaining a response to his Form 602. (*Id.* ¶ 23.) That request was rejected because the request bypassed the second level. (*Id.* ¶ 24.) Plaintiff then resubmitted his request to Cobb "to start the appeal process all over again." (*Id.* at 7 ¶ 26.) Plaintiff was transferred from Donovan CF to Pleasant Valley State Prison. (*Id.* ¶ 29.)

On February 10, 2012, Plaintiff filed a tort claim against A. Clark, J. Carey, E. Solis, and Defendants Daroglou and Perez in California Superior Court for "failure to protect, and property." (*Id*. at 8 ¶ 32.) The court dismissed Plaintiff's action as a result of his failure to exhaust his administrative remedies. (*Id.* ¶ 33.) The Court of Appeal affirmed. (*Id.* at 8–9 ¶¶ 35–37.)

Plaintiff claims that Defendants Cobb and Sharpe violated his right to access to courts by impeding his greivance process and preventing him from exhausting his administrative remedies, and that Defendants Beduhi, Daroglou, and Prez violated his Eighth Amendment right to protection against physical harm. Defendants Cobb, Sharpe, and Beduhi now move for summary judgment as to Plaintiff's claims against them.

## II. <u>Legal Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015)). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Id.*

In the context of this case, to obtain summary judgment, Defendants must first "either produce evidence negating an essential element of [Plaintiff's] claim . . . or show that [Plaintiff] does not have enough evidence of an essential element to carry [his]

ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Defendants succeed in that effort, Plaintiff "must produce evidence to support [his] claim" sufficient to demonstrate a genuine dispute of material fact. *Id.* at 1103. If Plaintiff "fails to produce enough evidence to create a genuine issue of material fact, [Defendants] win[] the motion for summary judgment. But if [Plaintiff] produces enough evidence to create a genuine issue of material fact, [he] defeats the motion." *Id.* (citation omitted). Because Plaintiff is an inmate appearing *pro se*, the Court construes his filings liberally, and does not require strict compliance with the summary judgment rules. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### III. **Evidentiary Record**

The summary judgment record contains the following relevant evidence.

**A. Defendants' Evidence**

In a declaration, Cobb states that he was an Appeals Coordinator at Donovan CF at the relevant time. (ECF No. 62-5 at 2 ¶ 2.) He explains that prior to January 28, 2011, the California Department of Corrections and Rehabilitation ("CDCR") had four levels of grievance review: (1) an informal level between the inmate and staff; (2) a first-level appeal, which is addressed by the Division Head; (3) the second-level appeal, which is addressed by the Institution Head; and (4) a third-level appeal, which is addressed by CDCR's Sacramento office. (*Id.* ¶ 4.) Once the third-level appeal is addressed, the administrative procedures are exhausted. (*Id.*) On January 28, 2011, CDCR eliminated the first, informal level. (*Id.* at 3 ¶ 4.)

All Form 602s, which function as appeals from any departmental action that may have an adverse effect upon the prisoner's welfare, go to the appeals office. (*Id.* at 2 ¶ 3.) Beginning in 2011, all appeals were date-stamped and assigned a log number, which prevents false claims that the office has lost a request. (*Id.* ¶ 5.) If an appeal meets the procedural requirements of Title 15 of the California Code of Regulations, it is accepted; if it does not meet those requirements, the appeal is "screened out" and returned to the

inmate with instructions on how to cure the defect. (*Id.*)

Cobb searched Donovan CF's database for all appeals filed by Plaintiff. (*Id.* ¶ 6.) He found three appeals: (1) November 5, 2010, requesting single-cell status and damages as a result of the attack (screened-out and rejected because the appeal failed to include evidence of an attempt to resolve the problem at the informal level); (2) December 7, 2010, "regarding his property" (screened-out and rejected because it was duplicative of a previously-filed appeal; and (3) July 16, 2011, "regarding his custody and classification, during which he requested the restoration of his single-cell status" (accepted by the appeals office, but later cancelled because Plaintiff was transferred to Pleasant Valley State Prison). (*Id.* at 3–4 ¶ 7.) According to Cobb, Plaintiff filed no other proper appeal relating to the attack against him in 2010. (*Id.* at 4 ¶ 8.)

Cobb states that he "never refused to accept or process any appeal that [Plaintiff] filed," and that he "screened out [Plaintiff's] appeal . . . because it was my understanding of CDCR's rules and regulations that inmate Smith had to address his housing situation with his correctional counselor at the informal level first." (*Id.* at 5 ¶ 9.) If the appeal was filed properly, Cobb states, he would have accepted it. (*Id.*) Cobb also states that he never conspired with Sharpe to obstruct Plaintiff's appeals, and was never asked to do so. (*Id.* ¶ 10.)

Defendants also offer a declaration by Sharpe, in which he states that he was Plaintiff's "Correctional Counsel I" at Donovan CF in 2010, and that he recalls Plaintiff giving him an appeal concerning his housing status in September 2010. (ECF No. 62-6 at 2 ¶ 3.) Before Plaintiff gave Sharpe the appeal, however, an incident occurred and Plaintiff returned to his cell. (*Id.*) Even if he had received the appeal, however, Sharpe states that it should have been given to a Correctional Counselor II—in Plaintiff's case, Counselor Reed—because only Reed could address the placement issues in Plaintiff's appeal. (*Id.* ¶ 4.) As a result, Sharpe states, he would not have taken the appeal, and would have told Plaintiff to give it to Cobb. (*Id.* ¶ 5.) Sharpe states that neither he nor Cobb ever worked to obstruct Plaintiff's appeal process. (*Id.* ¶ 6.)

Finally, Defendants offer a declaration by Beduhi. (ECF No. 62-4.) Beduhi states that he does not recall Plaintiff ever making a request about his cellmate situation or that his cellmate was a threat. (*Id.* at 2 ¶ 3.) If Plaintiff did tell Beduhi that Plaintiff's cellmate presented a threat, Beduhi would have reported it to his Sergeant, and appropriate steps would have been taken because prisoner safety is "of the utmost importance." (*Id.*) According to the Donovan CF logbook, when the attack on Plaintiff occurred, Beduhi was working in the "tower." (*Id.* ¶ 4.) Beduhi states that he never ignored any request for help or assistance from Plaintiff, and that he would have remembered if Plaintiff had told him of any concern about his cellmate being a threat to his safety. (*Id.* ¶ 5.) Finally, Beduhi states that he had "no authority to unilaterally make cell assignments," and did not house Plaintiff with his cellmate. (*Id.* at 3 ¶ 6.)

**B. Plaintiff's Evidence**

Plaintiff attaches several exhibits to his memorandum in opposition to Defendants' summary judgment motion.

### i. **Correspondence with Prison Officials**

Plaintiff offers copies of several pieces of correspondence between him and prison officials. These include:

- A copy of his Form 602, dated October 29, 2010, in which he states that he spoke to Defendants Prez, Daroglou, and Beduhi on September 29 about his cellmate's bizarre behavior, and describes the attack by his cellmate on October 30. (ECF No. 76, Ex. A, at 1–2.) Under the section labeled "action requested," Plaintiff wrote that he wanted to remain in a single cell, to receive damages as a result of the attack, and to receive all reports relating to the attack. (*Id.* at 1.)

- A copy of a Form 22 "inmate request for interview" form, dated November 29, 2010, in which he states that he gave the recipient the Form 602 on November 9, but Plaintiff had not received a response within 13 days, which Plaintiff asserts violated a California regulation. (*Id.* at 3.)

- A copy of another Form 22 request for interview, in which Plaintiff states that this was his second attempt to locate the status of his Form 602, and that

on December 30, 2010, Plaintiff was told by Sharpe that Sharpe could not locate any reports regarding the September 30 attack. (*Id.* at 4.) He concludes by stating, "[t]here is a need to exhaust administrative remedies." (*Id.*) On the same page, Cobb wrote in response: "you[r] appeal is not in the appeal office." (*Id.*)

- Copies of letters written by him to the Chief Inmate Appeal Officer in Sacramento, California, both of which are dated May 23, 2011. (ECF No. 76, Ex. B, at 1–2.) These letters assert that his Form 602 has not been answered by Donovan CF staff, and asks for assistance in obtaining a response. (*Id.*)

- Copies of responses sent to Plaintiff from the Inmate Appeals Branch Chief, dated June 16, 2011, stating that Plaintiff's appeal had been rejected because it bypassed "required lower level(s) of review." (*Id.* at 3–4.)

- A copy of another Form 22 request for interview signed by Plaintiff and dated June 30, 2011. (*Id.* at 5.) Attached to that Form 22 is a copy of a November 28, 2010 Form 602 in which Plaintiff complains that a previous request that the staff return his misplaced property has not been answered. (*Id.* at 6.) Also attached is a copy of an undated Form 22 in which Plaintiff complains about the lack of response to his request for the return of his property. (*Id.* at 7.) On the same page, a response from staff member E. Solis states that Plaintiff previously indicated that he had already received his property. (*Id.*) A reply by Plaintiff is also included on the same page, in which Plaintiff states he had not received all of his property. (*Id.*) Also attached are copies of two other Form 22s, dated December 15, 2010, and January 19, 2011, in which Plaintiff again complains that he has not received responses as a result of prior appeals. (*Id.* at 8–10.) In response to the June 30, 2011 Form 22, Cobb wrote to Plaintiff that his "request is inappropriately submitted on this form. If you wish to submit the 602's you have attached, you must do so as permitted by CCR Title 15 Section 3084. They will be processed according to policy." (*Id.* at 5.)

- Copies of correspondence between Plaintiff and the Regulation and Policy Management Branch Chief, in which Plaintiff requests copies of photographs and reports relating to the September 30, 2010 attack. (ECF No. 76, Ex. C.) The public records act coordinator responded to this request by indicating that no photographs or reports could be found. (*Id.* at 2–3.)

ii. **Prison and Litigation Documents**

Plaintiff also offers a copy of a report prepared by Donovan's Associate Warden

detailing the October 30, 2010 attack and the medical attention that Plaintiff received. (ECF No. 76, Ex. D.) The report concludes that Donovan CF staff's placement of Plaintiff and his cellmate "was in compliance with departmental guidelines," but noted that some paperwork was missing from both prisoners' files. (*Id.* at 2.)

Also attached to the memorandum are copies of correspondence between Plaintiff and the attorneys representing the defendants in the case in California Superior Court referenced above. (ECF No. 76, Ex. E.)

### iii. Plaintiff's Declaration

Finally, Plaintiff offers a declaration in which he makes the following relevant assertions. Plaintiff filed a tort claim in California Superior Court on February 10, 2012, asserting claims "for failure to protect, and lost [] propert[y]." (ECF No. 76, Smith Decl., at 2–3 ¶ 4.) The Superior Court sustained the defendants' demurrer on the ground that Plaintiff failed to exhaust administrative remedies. (*Id.*) The Court of Appeal affirmed. (*Id.* at 3 ¶ 5.) California prison officials know "how to 'exploit' the Prison Litigation Reform Act"; "are in total control of the Appeals Process"; and prisoners "lose control over papers as soon as [they] turn them over to prisoner staff." (*Id.* ¶¶ 7–8.) Plaintiff also states that Cobb and Sharpe "deprived Plaintiff access to the Court" (*id.* ¶ 9), and did so deliberately to prevent Plaintiff from exhausting his administrative remedies (*id.* at 3–4, ¶ 10).

In response to Beduhi's claim that he does not remember having a conversation with Plaintiff about his cellmate presenting a threat to Plaintiff, Plaintiff states, "[t]he Conversation did take place." (*Id.* at 4 ¶ 11.) Plaintiff also states that Beduhi "concealed himself" with the assistance of a litigation coordinator by refusing to accept service of Plaintiff's state court complaint. (*Id.*) Plaintiff states that Beduhi is "untrustworthy." (*Id.* ¶ 12.)

### IV. Discussion

#### A. Access to Courts

Plaintiff claims that Defendants Cobb and Sharpe violated Plaintiff's right to

access to the courts by deliberately impeding Plaintiff's ability to exhaust his administrative remedies, which resulted in the dismissal of his state court action. For the reasons discussed below, the Court grants summary judgment on this claim only in part, but gives notice to Plaintiff that without further relevant evidence it will grant summary judgment in full as to this claim.

As an initial matter, Defendants argue that Cobb and Sharpe are entitled to summary judgment because Plaintiff has no constitutional right to have his inmate appeals "accepted or processed." (ECF No. 62-1 at 9.) They cite *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and *Riley v. Roach*, Fed App'x 504, 507 (9th Cir. 2014), all of which acknowledge the fact that prisoners do not possess a constitutional right to a prison grievance system. These cases, however, do not apply to Plaintiff's claim. Plaintiff accuses Cobb and Sharpe of deliberately delaying the grievance procedure in Donovan CF with the purpose of preventing Plaintiff from pursuing a claim in California court. Plaintiff's claims have nothing to do with the adequacy of the official grievance procedures.

"Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vottorio*, 658 F.3d 1090, 1101–02 (9th Cir. 2011), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The Ninth Circuit has "traditionally differentiated between two types of access to court claims": (1) the right to assistance, such as access to law libraries, and (2) the right against unreasonable, active interference, described as "erect[ing] barriers that impede the right of access of incarcerated persons." *Id.* at 1102–03 (quoting *John L. v. Adams*, 969 F.2d 228, 235 (9th Cir. 1992)). Here, Plaintiff's claim against Cobb and Sharpe falls within the latter category.

An essential element to a prisoner's access to court claim is that the prisoner has experienced an actual injury as a result of the officials' interference. *Lewis v. Casey*, 518 U.S. 343, 349–56 (1996). This "is a jurisdictional requirement that flows from the

standing doctrine and may not be waived." *Navada Dep't of Corrs. v. Greene*, 548 F.3d 1014, 1018 (9th Cir. 2011). The prisoner must be able to show "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353 (footnote omitted). In *Lewis*, the Supreme Court suggested that there is a limited universe of claims protected by a prisoner's constitutional right to access to the courts. To avoid the right of access to courts becoming a "guarantee [of] inmates the wherewithal to transform themselves into ligating engines capable of filing everything from shareholder derivative actions to slip-and-fall claim," the Court explained that an actual injury in this context can be shown only if the frustrated underlying claim is a direct appeal from the prisoner's conviction, a habeas petition, or a civil rights action challenging the prisoner's conditions of confinement. *Id.* at 354–55.

In the California Superior Court litigation from which Plaintiff contends he was denied his right of access, Plaintiff asserted two claims: (1) "los[s] of property," and (2) "failure to protect." The Court addresses these underlying claims separately.

### i. Property Claim

In their summary judgment motion briefing, Defendants do not discuss Plaintiff's "los[s] of property" state-court claim at all. Because Defendants offer no argument as to why this aspect of Plaintiff's access to court claim fails, the Court denies Defendants' motion as to this aspect of the claim.

The Court notes, however, that it cannot ascertain from the evidence in the record what legal theory Plaintiff used to seek relief for this claim in state court. Because Plaintiff does not offer, for example, a copy of his state court complaint, the only information in the record is that Plaintiff brought suit for "los[s] of property." (ECF No. 76, Smith Decl., at 2–3, ¶ 4.) The ambiguity as to the legal basis for Plaintiff's state-court property claim raises the prospect of a fatal flaw in his access to court claim. It is clear that Plaintiff's property claim was neither an appeal of a conviction or a habeas petition. Thus, unless the property claim challenged an aspect of the conditions of his confinement, Plaintiff cannot prove that he was injured for the purposes of an access to

court claim. *Lewis*, 518 U.S. at 354–55; *see also Allen v. Raemisch*, 603 Fed. App'x 682, 684 (10th Cir. 2015) ("Plaintiff cannot demonstrate an [access to courts violation] based on his difficulties in litigating the small-claims-court action, since the right of access to the courts has been defined to cover only civil rights claims and direct and collateral attacks on convictions and sentences."); *Cosco v. Lightsey*, 411 Fed. App'x 959, 960 (9th Cir. 2011) ("Cosco's underlying litigation was not a challenge to his conviction or to his conditions of confinement. Rather, it was based on a declaratory judgment action related to a settlement agreement he had entered into with Wyoming prison officials, regarding compensation for property that was confiscated from his prison cell."); *Smith v. Craven*, 61 Fed. App'x 159, 162 (6th Cir. 2003) ("The right of access does not extend to a prisoner's property claim filed in state court.").

**Accordingly, under its authority set forth in Federal Rule of Civil Procedure 56(f), the Court gives notice to Plaintiff of the following. The Court is considering granting summary judgment to Defendants Cobb and Sharpe on the portion of Plaintiff's access to court claim premised on his property claim brought in state court. The Court is considering doing so because there is no evidence that the property claim was protected by Plaintiff's constitutional right of access to courts. The Court gives Plaintiff 21 days from the date of this order to offer evidence that his state court property claim was the kind of action that is protected by a prisoner's constitutional right to access to courts.**

### ii. Failure to Protect Claim

Plaintiff's other state-court claim involved the prison officials' "failure to protect." (ECF No. 76, Smith Decl., at 2–3 ¶ 4.) This claim was also dismissed by the California Superior Court because Plaintiff had not exhausted his administrative remedies. (*Id.*) Defendants argue that Plaintiff cannot demonstrate an actual injury because he is pursuing the same substantive claim in this litigation. The Court agrees.

As discussed above, to succeed in his access to courts claim, Plaintiff must demonstrate that he has actually been injured by the alleged interference. *Lewis*, 518

U.S. at 350–51. Plaintiff offers no evidence that by pursuing his claim in this Court, as opposed to state court, he has any less ability to obtain the relief he seeks. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (requiring a plaintiff to show "a remedy that may be awarded as recompense [for the interference with access to courts] but not otherwise available in some suit that may yet be brought"). Thus, no jury could reasonably conclude that Plaintiff has been injured by Defendants' alleged interference with Plaintiff's failure to protect claim. *See McKenzie v. Rossi-Hill*, 459 Fed. App'x 661, 662 (9th Cir. 2011) (affirming summary judgment because the plaintiff "failed to identify any actual injury he suffered as a result of prison officials' actions"); *Ra-o-kel-ly v. Johnson*, 459 Fed. App'x 652, 653 (9th Cir. 2011) (dismissing access to courts claim for same reason). Cobb and Sharpe are therefore entitled to summary judgment on Plaintiff's access to court claim to the extent that it is based on Plaintiff's inability to pursue his failure to protect claim in state court.

**B. Failure to Protect**

Plaintiff claims that Defendant Beduhi violated Plaintiff's Eighth Amendment right to be protected from other inmates' attacks. Because there is no genuine dispute that Beduhi was not subjectively aware of a substantial risk of harm to Plaintiff, Beduhi is entitled to summary judgment on this claim.

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state such a claim under the Eighth Amendment, a prisoner must show (1) "objectively viewed, the prison official's act or omission [caused] a substantial risk of serious harm," and (2) "the official [was] subjectively aware of that risk and act[ed] with deliberate indifference to inmate health or safety." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015). "In other words, 'the official must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). The official's knowledge may be proven by circumstantial evidence, such as evidence that the substantial risk was "longstanding,

pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the [official] being sued had been exposed to information concerning the risk and thus must have known about it." *Id.* at 842 (internal quotation marks omitted). In short, mere negligence is insufficient to establish an Eighth Amendment claim. *See, e.g.*, *id.* at 836; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) ("Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." (internal quotations and alterations omitted)).

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, no jury could reasonably conclude that Beduhi was aware of a substantial risk of serious harm to Plaintiff. According to Plaintiff, he told Beduhi that his cellmate was acting bizarrely by (1) being nude in their cell, (2) wanting to watch Plaintiff use the toilet, and (3) speaking about sex with men and rape. Even if this conversation occurred, Beduhi was not aware of a substantial risk that Plaintiff's cellmate would physically attack him. None of the complaints Plaintiff made about his cellmate suggested that the cellmate would be physically violent. In other words, Beduhi's knowledge of Plaintiff's cellmate's "bizarre" behavior was not reason for him to worry that the cellmate would physically attack Plaintiff. *See, e.g.*, *Sisneros v. Brown*, No. 14-cv-0891-GPC-RBB, 2015 WL 4662056, at *3–6 (S.D. Cal. Aug. 6, 2015) (finding that an inmate's informing a prison official about his cellmate's "bizarre and crazy behavior" and that the cellmate needed "psych meds" was insufficient to put the official on notice of a substantial risk of harm). Moreover, the fact that Plaintiff's cellmate talked about rape, without more, does not raise a permissible inference that there was a substantial risk that the cellmate would attack Plaintiff. There is no evidence, for example, that this discussion of rape suggested that Plaintiff's cellmate actually had, or intended to, rape someone.

There also is no evidence of a longstanding or well-documented history of Plaintiff's cellmate attacking other inmates to raise the inference that Beduhi knew the

13

cellmate posed a serious safety risk to Plaintiff. The only evidence that offers any information about Plaintiff's cellmate comes from a document dated September 29, 2010, labeled "Interdisciplinary Progress Notes, Special Communication Assistance Needs," and which appears to be an "emergency referral" for a psychological report on Plaintiff's cellmate. (*See* ECF No. 76, Ex. D, at 5–6.[2]) While barely legible, the report appears to indicate that Plaintiff's cellmate was unable to "get along" with his cellmates and was "irritating others with loud singing, pacing, yelling, etc.," and that he got into an altercation with a prior cellmate. (*Id.* at 5.) This document not suggest a "longstanding" or "well-documented" history of physical harm to other inmates such that the risk of serious harm to Plaintiff was "obvious."[3] *Farmer*, 511 U.S. at 842.

Moreover, there is no evidence suggesting that Beduhi would have been aware of the contents of this report. There is no evidence in the record, for example, that someone in Beduhi's position would have been given the report as a matter of course, or even would be privy to such information. *See, e.g.*, *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) (instructing that, for purposes of this "obviousness" inquiry, the factfinder should look to "the basic general knowledge that a prison official may be presumed to have obtained" by, for example, considering the knowledge one would be presumed to have in order to "perform[] the functions of that job"). To the contrary, the only relevant evidence suggests that Beduhi does not have the authority to make cell assignments for prisoners (ECF No. 62-4 at 3 ¶ 6), which suggests that he would not have needed such

---

[2] Pages 4 and 5 of Exhibit D appear to by copies of the same first page of this report.
[3] On October 16, 2017, Plaintiff filed a "supplemental document," which appears to be an effort to amend his opposition to the summary judgment motion. (ECF No. 78.) The evidence included with this document is the same evidence he provided his original opposition except for one document: a typed "Psychiatry MD Progress Note" for Plaintiff's cellmate issued on September 29, 2010. (*Id.*, Ex. B, at 3.) The information in this document further confirms that it was not obvious, based on official reports, that Plaintiff's cellmate was a safety risk to Plaintiff. The report states that while the cellmate "apparently has difficulties with cellies and today was pacing, yelling, with odd behaviors," "[h]e came to [the] meeting [with the physician] calmly and told writer he did not want meds, that he will pray and get a new cellie later on today. He was very controlled, but appropriate. He denies all psychotic sxs and did not admit to any depression." (*Id.*)

14

information to perform his duties.

In sum, no jury could reasonably conclude that Beduhi was aware of a substantial risk that Plaintiff's cellmate would attack Plaintiff on September 30, 2010. Beduhi is thus entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

## V. Conclusion

The Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.[4] Summary judgment is granted in favor of Defendants Cobb and Sharpe on Plaintiff's access to court claim to the extent that it is premised on his inability to pursue a failure to protect claim. Summary judgment is granted in favor of Defendant Beduhi on Plaintiff's Eighth Amendment claim. Summary judgment is denied as to Plaintiff's access to courts claim to the extent it is premised on his inability to file a claim for his "lost property." **The Court notifies Plaintiff, however, that it is considering granting summary judgment on the aspect of his access to courts claim relating to his "property" claim in state court because there is no evidence that this claim was protected by his constitutional right of access to courts. Within 21 days of this order, Plaintiff shall submit evidence that would preclude summary judgment on this basis.**

**IT IS SO ORDERED.**

Dated: October 23, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

[4] Defendants have filed a motion for an extension of time to file a reply. (ECF No. 79.) In light of the Court's ruling, the motion is DENIED as moot.