UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY SMITH,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>R. COBB; et al.,<br><br>　　　　　　　　Defendants. | Case No.: 3:15-cv-00176-GPC-WVG<br><br>**ORDER REGARDING SUMMARY JUDGMENT NOTICE** |

This order resolves the Court's earlier warning to Plaintiff that it was "considering granting summary judgment as to the remainder of his claims against Defendants Cobb and Sharpe." (ECF No. 80.) Plaintiff filed a response to that order (ECF No. 84), as have Defendants Cobb and Sharpe (ECF No. 85). For the reasons stated below, the Court gives Plaintiff new notice that it is considering entering summary judgment in favor of Defendants Cobb and Sharpe on the ground that Cobb and Sharpe's actions were not the cause of the injury Plaintiff alleges.

I. **Background**

In this case, Plaintiff asserts claims against officials at Donovan Correctional Facility arising from an incident in which Plaintiff's cellmate attacked Plaintiff. Plaintiff claims that Defendants Cobb and Sharpe violated his right of access to courts by impeding his grievance process and preventing him from exhausting his administrative

1

remedies. Plaintiff also alleges that Defendants Beduhi, Daroglou, and Perez denied Plaintiff his Eighth Amendment right to protection against physical harm. In the Court's previous order—addressing a motion for summary judgment filed by Cobb, Sharpe, and Beduhi—it granted summary judgment in favor of Beduhi. (ECF No. 80 at 12–15.) With respect to Plaintiff's First Amendment claims, the Court granted summary judgment in favor of Cobb and Sharpe to the extent that those claims were premised on Plaintiff's inability to bring an Eighth Amendment claim. (*Id.* at 11–12.)

The remainder of Plaintiff's First Amendment claims against Cobb and Sharpe involved Plaintiff's assertion that in clearing the cell after Plaintiff's cellmate's attack, prison officials took Plaintiff's property and have unlawfully failed to return it. In 2012, Plaintiff filed a lawsuit against those officials in California Superior Court over the failure to return the property. (ECF No. 4 at 8 ¶ 32.) The Superior Court dismissed Plaintiff's case for failure to exhaust administrative remedies. (*Id.* ¶ 32.) Here, Plaintiff argues that Cobb and Sharpe refused to process Plaintiff's grievances, and as a result, they denied him an opportunity to exhaust his administrative remedies.

As discussed in the Court's previous order, Defendants have offered sworn declarations by Cobb and Sharpe. In Cobb's declaration, he states that Donovan's records include only three "Form 602s"—formal prisoner grievance appeals—from Plaintiff: (1) November 5, 2010, requesting single-cell status and damages as a result of the attack (screened-out and rejected because the appeal failed to include evidence of an attempt to resolve the problem at the informal level); (2) December 7, 2010, "regarding his property" (screened-out and rejected because it was duplicative of a previously filed appeal); and (3) July 16, 2011, "regarding his custody and classification, during which he requested the restoration of his single-cell status" (accepted by the appeals office, but later cancelled because Plaintiff was subsequently transferred to a different prison). (ECF No. 62-5 at 3–4 ¶ 7.) In Sharpe's declaration, he states that he recalls Plaintiff wanting to give Sharpe an "appeal" concerning housing assignments, but an incident arose during the conversation, and Plaintiff was forced to return to his cell without

actually giving the request to Sharpe. (ECF No. 62-6 at 2 ¶ 3.) Regardless, Sharpe declares, he would not have been able to respond to Plaintiff's request because he did not possess any power to address prisoner placement issues. (*Id.* ¶ 4.)

In his response to these declarations, Plaintiff offered copies of correspondence between him and prison officials regarding his grievances. On November 28, 2010, Plaintiff filed a Form 602 stating that on November 7 he had sent a different Form 602 to Officer Clark "in regards to my misplace[d] property. My sweatpants[,] hot pot, tennis shoes. These items were mistakenly roll[ed] up and put into my cellie['s] property." (ECF No. 76, Ex. B at 6.) On December 15, 2010, Plaintiff sent a Form 22 "Inmate Request for Interview"[1] to the "Appeal Coordinator," and complained that he still had not received any response. (*Id.* at 8–9.) On January 19, 2011, Plaintiff sent a Form 22 to Cobb stating that he still had not received any response and complaining that this delay was in violation of California law. (*Id.* at 10.) In a different, undated Form 602, Plaintiff again complained that he had not received any response from Officer Clark; in response, staff member E. Solis wrote on February 18, 2011, that Plaintiff had already received his property. (*Id.* at 7.) Plaintiff responded on March 11, 2011, that he had not received all of his property. (*Id.*) Finally, on June 30, 2011, Plaintiff filed another Form 22 again asking that his Form 602s be "place[d] in the right direction." (*Id.* at 5.) On July 6, 2011, Cobb responded by stating: "Your request is inappropriately submitted on this form. If you wish to submit the 602's you have attached, you must do so as permitted by CCR Title 15 Section 3084. They will be processed according to policy." (*Id.*)

---

[1] "A [California] prisoner can send a 'Request for Interview' form to the [official reviewing a Form 602 appeal], asking whether the [602] appeal was received and requesting a report on its current status. If it appears the appeal was lost, a prisoner can try filing a new 602 appeal on the issue with the same date as the original appeal, along with a letter to the appeals coordinator explaining that the appeal is a duplicate which is being submitted to replace the lost appeal. If the appeals coordinator is not cooperative, a prisoner can try to get action by sending a copy of the appeal and documentation of any efforts to get the appeal processed to the Chief of Inmate Appeals in Sacramento." MacKay, The California State Prisoners Handbook 19–20 (The Prison Law Office, 4th ed. 2008).

In the Court's previous order, it noted that Cobb and Sharpe—despite requesting summary judgment in full—had not offered any argument as to why the Court should grant summary judgment on Plaintiff's property-based access-to-court claim. (ECF No. 80 at 10.) The Court noted, however, that it appeared that the Superior Court's dismissal of Plaintiff's property claim may not have violated Plaintiff's First Amendment rights because that action may not have been protected by Plaintiff's right of access to courts. As a result, the Court gave notice to Plaintiff that it was considering granting summary judgment on Plaintiff's access-to-courts claim with respect to the dismissal of his property based claim, and that he should offer evidence precluding summary judgment on the ground that "there is no evidence that the property claim was protected by Plaintiff's constitutional right of access to courts." (ECF No. 80 at 10–11.)

Plaintiff filed a timely response to the Court's instructions. (ECF No. 84.) Rather than offer any additional evidence,[2] however, Plaintiff instead argues that he is entitled to summary judgment against Cobb and Sharpe. (*Id.* at 6–7.) In their responsive filing, Cobb and Sharpe attach a copy of the operative complaint in Plaintiff's Superior Court case as well as that court's ruling dismissing the complaint. (ECF No. 85.) The Court takes judicial notice of these documents. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)). In the operative complaint before the Superior Court, Plaintiff alleged that after Plaintiff's cellmate's attack, Officer Carey was assigned to "roll" the cellmate's property, and when he did, Carey accidentally included some of Plaintiff's property, including a hot pot. (ECF No. 85-1, Ex. A at 4.) When Plaintiff was transported to the hospital, officers took his sweatpants, wedding ring, gold chain, and tennis shoes. (*Id.*) The complaint alleges

---

[2] Plaintiff has already been warned twice during this litigation of the consequences of failing to offer adequate evidence at the summary judgment stage. (*See* ECF Nos. 62-3, 70.)

4

3:15-cv-00176-GPC-WVG

that these items had been listed incorrectly as his cellmate's property in the "unit program office" logs. (*Id.* at 4–5.) Plaintiff argued that the officers "deprive[d him] of [his] property with no legal justification." (*Id.* at 5.) The complaint is labeled as asserting a claim of "intentional tort" resulting in personal injury and "property destruction." (*Id.* at 2.)

The Superior Court's order dismissing the complaint states the following: "DEMURRER by defendant M. Cate is SUSTAINED, without leave to amend. . . . Plaintiff has failed to allege facts showing he exhausted his administrative remedies and timely filed a claim under the Tort Claims Act. (Gov. Code §§ 911.2, 945.4; *State v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239; *Wright v. State* (2004) 122 Cal.App.4th 659, 664–67)." (ECF No. 85-1, Ex. A at 1.)

## II. Discussion

"Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vottorio*, 658 F.3d 1090, 1101–02 (9th Cir. 2011), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The Ninth Circuit has "traditionally differentiated between two types of access to court claims": (1) the right to assistance, such as access to law libraries, and (2) the right against unreasonable, active interference, described as "erect[ing] barriers that impede the right of access of incarcerated persons." *Id.* at 1102–03 (quoting *John L. v. Adams*, 969 F.2d 228, 235 (9th Cir. 1992)). The Court will refer to former category as "assistance" claims, and the latter as "impediment" claims. As noted in this Court's previous order, Plaintiff's access-to-courts claim is an impediment claim.

This case raises the question of what kinds of legal actions are protected by the First Amendment's guarantee of access to courts. The universe of legal actions protected by this right differs based on whether it is an assistance or impediment claim. In *Lewis*, the Supreme Court clarified that a prisoner may bring assistance claims only based on the prisoner's efforts to pursue direct appeals, habeas corpus actions, and challenges to

conditions of confinement. *Lewis*, 518 U.S. at 349–56. With respect to impediment claims, however, the Ninth Circuit has suggested that *Lewis*'s limitations do not apply. *See Silva*, 658 F.3d at 1103. As a result, it appears that the answer to the Court's earlier query is that Plaintiff's property-based claim in Superior Court was protected by his First Amendment right of access to courts.

The Court, however, has identified a different issue with Plaintiff's right-of-access claim that might entitle Cobb and Sharpe to summary judgment. That issue is one of causation. A plaintiff asserting a § 1983 action must prove that the defendant's actions were the "actionable cause" of the injury of which the plaintiff complains. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). This "actionable cause" requirement includes both proximate and in-fact causation. *Id.* As to proximate cause, the governing inquiry is normally whether the constitutional violation was a foreseeable risk of the defendant's conduct, but it can also be "determined by the existence of intervening or superseding actual causes," which "have been held to prevent the direct causal connection required for liability." *Smith v. Harrington*, No. C 12-3533 LB, 2015 WL 1407292, at *25 (N.D. Cal. Mar. 27, 2015).

Here, it does not appear that, even assuming Cobb and Sharpe's actions prevented Plaintiff from exhausting the 602 process, their actions were the proximate cause of the dismissal of Plaintiff's Superior Court property claim. Rather, the proximate cause of that dismissal appears to be Plaintiff's failure to comply with the exhaustion requirements of the California Government Claims Act (which do not involve the Form 602 process) or to argue that an applicable exemption from those requirements applied in his case.

As noted in the Superior Court's order dismissing Plaintiff's claims, the California Government Claims Act requires a plaintiff to exhaust his administrative remedies before bringing an action in Superior Court. *See* Cal. Gov. Code § 945.4 ("[N]o suit for money or damages may be brought against a public entity on a cause of action . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . ."); *see also id.* § 950.2.

Such requirements apply to prisoners. *Id.* § 945.6(c). In the context of a state prisoner like Plaintiff, this claim must be made to the Victim Compensation and Government Claims Board (the "Board"). *See Dragasits v. Yu*, No. 3:16-cv-1998-BEN-JLB, 2017 WL 3141802, at *17 (S.D. Cal. July 24, 2017). Crucially, the California Department of Corrections and Rehabilitation ("CDCR") administrative appeal review process—which involves Forms 602 and 22—is *not* the type of exhaustion required before filing a claim in Superior Court; it is a different process. In fact, the CDCR administrative appeal review process is not a prerequisite for filing a claim before the Board. *See* MacKay, The California State Prisoners Handbook 681 (The Prison Law Office, 4th ed. 2008) ("[I]n 2004, the Government Claims Board began requiring prisoners to exhaust the 602 process before filing a Government Claims Form. However, problems arose because prisoners' administrative appeals frequently were not fully processed by the time of the six-month deadline for filing a Government Claims Board claim. Consequently, the Board rescinded this policy and no longer requires prisoners to complete the 602 appeal process before filing a Board of Control claim."). There is no evidence before the Court (or allegation made) that Plaintiff filed a claim before the Board. Thus, based on the evidence before the Court, it appears that regardless of Cobb and Sharpe's actions, the Superior Court would still have dismissed Plaintiff's claims in light of his failure to file a claim before the Board. *See Dragasits*, 2017 3141802, at 17 (dismissing claim because the complaint failed "to allege facts demonstrating or excusing compliance with the claim presentation requirement of the California Government Claims Act"); *King v. Chokatos*, No. 1:12-cv-1936-LJO-GSA-PC, 2014 WL 3362237, at *5 (E.D. Cal. July 9, 2014) ("Compliance with the Government Claims Act is an element of the cause of action, is required, and a failure to file a claim is fatal to a cause of action." (citations omitted)). In other words, it appears that it was Plaintiff's failure to file a claim before the Board that was the "actionable cause" of the dismissal of his Superior Court suit.

Moreover, even if Sharpe and Cobb somehow prevented Plaintiff from properly bringing a claim before the Board, there were arguments available to Plaintiff that he was

excused from compliance with the Government Claims Act. For example, equitable estoppel prevents public entities and officials from "asserting plaintiff's noncompliance with the claims-presentation statutes." *Christopher P. v. Mojave Unified Sch. Dist.*, 23 Cal. Rptr. 2d 353, 356 (Ct. App. 1993); *see also John R. v. Oakland Unified Sch. Dist.*, 769 P.2d 948, 951 (Cal. 1989) ("It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act."). Thus, in the Superior Court action, Plaintiff also had a viable response to the defendants' exhaustion-based demurrer. In that event, it was Plaintiff's failure to offer an available argument that caused the dismissal of the Superior Court action, not the actions of Cobb or Sharpe.[3]

The Court recognizes, however, that the causation issue discussed above differs from the ground on which it previously gave notice to Plaintiff that summary judgment might be entered against him. Thus, in an abundance of caution, the Court gives new notice to Plaintiff that it is considering granting summary judgment on the remaining aspect of his First Amendment claims on the ground that Cobb and Sharpe's actions were not the proximate cause of the dismissal of Plaintiff's Superior Court action. **Plaintiff shall provide any evidence or argument in response to this conclusion within 21 days of the date this order is issued.** If Plaintiff fails to offer evidence and/or persuasive argument that Cobb and Sharpe's actions were the "actionable cause" of the dismissal of Plaintiff's Superior Court action, the Court will grant summary judgment on the remaining aspect of Plaintiff's First Amendment claim against Cobb and Sharpe.

### III. Remaining Defendants: Order to Show Cause

The Court also notes that it appears that neither Defendants Daroglou nor Perez have been served process in this case. Their summonses were returned unexecuted.

---

[3] It should also be noted that if Plaintiff disagreed with the Superior Court's dismissal of his action, the proper way of resolving his disagreement would have been to appeal the dismissal of his action to the California Court of Appeal, not to bring a constitutional claim in federal court.

(ECF Nos. 9, 10, 18, 30.) The Court granted Plaintiff's motion to proceed in forma pauperis on February 18, 2015, and later granted Plaintiff's motion to substitute certain defendants on July 13, 2015, adding Daroglou and Perez as defendants as a result. (ECF Nos. 3, 7.) Federal Rule of Civil Procedure 4(m) required Plaintiff to serve Daroglou and Perez within 120 days of the Court's order adding them as defendants in this case.[4] That deadline has long passed. **The Court therefore orders Plaintiff to show cause, within 21 days of the date this order is issued, why the Court should not dismiss Plaintiff's claims against Defendants Daroglou and Perez in light of Plaintiff's failure to serve those defendants within the time limits set forth in Rule 4(m).**

## IV. Conclusion

In sum, the Court orders Plaintiff to respond to the Court on two issues. First, the Court puts Plaintiff on notice that it is considering entering summary judgment on the remaining portion of Plaintiff's First Amendment claims because it appears that Cobb and Sharpe's actions were not the proximate cause of the Superior Court's dismissal of Plaintiff's Superior Court action. Second, the Court notes that it appears that Plainitff has failed to serve Defendants Daroglou and Perez within the period set forth in Rule 4(m), and orders Plaintiff to show cause why the claims against those defendants should not be dismissed. Plaintiff's response to both issues shall be filed no later than 21 days after the date this order is issued. Failure to respond properly may result in the dismissal of the remaining claims in this action.

**IT IS SO ORDERED.**

Dated: March 2, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[4] The time limitation in Rule 4(m) has since been amended to 90 days. Because the Federal Rules of Civil Procedure in effect at the time of the Court's order required that service be completed within 120 days, the Court applies that deadline.